CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
09/17/2019
JULIA C. DUDLEY, CLERK
BY: H. Wheeler
DEPUTY CLERK

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:18-cr-00025 |
| v. | **MEMORANDUM OPINION** |
| BENJAMIN DRAKE DALEY, *et al.*, | JUDGE NORMAN K. MOON |
| *Defendants.* | |

This matter is before the Court upon Defendants Benjamin Drake Daley, Michael Paul Miselis, and Thomas Walter Gillen's motions for bond pending appeal. (Dkt. 139, 146, 147).

On October 10, 2018, Defendants were each indicted on one count of Travel with the Intent to Riot under 18 U.S.C. § 2101 and one count of Conspiracy under 18 U.S.C. § 371 for their conduct leading up to and culminating at the August 12, 2017, "Unite the Right" ("UTR") rally. (Dkt. 8). Defendants Gillen and Daley were denied pretrial release upon their arrest in California. (Dkt. 7-11, 53-2). Defendant Daley unsuccessfully challenged his detention in the Western District of Virginia. (Dkt. 53, 63). Miselis was deemed eligible for pretrial release following arrest in California, but this decision was immediately challenged and overturned before this Court. (Dkt. 65, 66). After unsuccessfully attacking the prosecution on constitutional grounds, each Defendant pled guilty with the aid of a plea agreement to a single count under § 371, and on July 19, 2019, Daley, Miselis, and Gillen were sentenced to 37 months, 27 months, and 33 months, respectively. (Dkt. 157, 159, 161).

As part of their plea agreements, Defendants reserved the right to attack their convictions on appeal by arguing the unconstitutionality of 18 U.S.C. § 2101. Their joint appeal in the Fourth

Circuit is now docketed, (Case. No. 19-4550), and these three Defendants seek release on bond pending appeal.[1] As the individual analyses herein show, release on bond must be denied to these three Defendants.

## Legal Standard

The Bail Reform Act, codified at 18 U.S.C. §§ 3141–56, governs the issue of when a defendant may be released pending judicial proceedings. Specifically, 18 U.S.C. § 3143(b) governs release pending appeal for a criminal defendant who has already been sentenced. The presumption under § 3143(b)(1) is that the defendant be detained. Section 3143(b)(1) provides that a defendant "who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal"—which is the case here—"shall ... be detained." A defendant must be released pending appeal, however, if a court finds all four of the following:

(1) "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released ...";

(2) "that the appeal is not for the purpose of delay";

(3) "that the appeal ... raises a substantial question of law or fact"; and

(4) "that the appeal is ... likely to result in—

(i) reversal,

(ii) an order for a new trial,

(iii) a sentence that does not include a term of imprisonment, or

(iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process."

---

[1] Defendant Cole Evan White did not join in the underlying appeal and thus does not seek release pending the Fourth Circuit's decision. (Dkt. 175).

*Id.* When a court evaluates a defendant's risk of danger to the community or others, that risk must be tied to the defendant's offense conduct. *United States v. Byrd*, 969 F.2d 106, 110 (5th Cir. 1992). However, constitutional concerns that favor release at the pretrial stage are diminished at the post-conviction stage. *United States v. Abuhamra*, 389 F.3d 309, 317–18 (2d Cir. 2004); *United States v. Santiago-Mendez*, 599 F. Supp. 2d 95, 104 (D. Puerto Rico 2009). Furthermore, although § 3143(b)(1) allows "some releases pending appeal, it is obvious from the statute that such releases are to be the exception." *United States v. Hamrick*, 720 F. Supp. 66, 67 (W.D.N.C. 1989). The Court will analyze each Defendant's motion individually.

### Defendant Michael Paul Miselis

In support of release, Miselis argues that it is "clear and convincing" that he poses neither a risk of flight nor a danger to others because of his stable familial and professional life. (Dkt. 188 at 1). Miselis is a doctoral candidate in aerospace engineering at the University of California, Los Angeles and has worked for years in the field. *Id*. He also cites his absence of criminal history and his previously granted security clearance. *Id*. At the Court's request, Miselis also proposed the following conditions for release: home confinement in his parents' custody with electronic monitoring and U.S. Probation supervision, along with a secured bond. *Id.*

While these representations indicate that Miselis may have a stable home and job to return to, he has not adequately demonstrated that he would not pose a danger to others upon release, as is his burden post-conviction. Miselis is an admitted member of RAM, or the "Rise Above Movement," a militant white-nationalist organization that trains its members for violent encounters at political rallies. (Dkt. 142 at 2, 5). Miselis has attended several such training sessions. *E.g.*, *id. at 5–10*. Miselis has engaged in violence at political rallies in the past as a member of RAM. *Id*.

At the UTR Rally, Miselis personally committed multiple acts of violence against counter protesters. *Id.* at 18, 23. When Miselis was arrested, ammunition, skull masks, and smoke bombs were found in his possession. (Dkt. 191 at 6).

Little has changed since the Court found by a preponderance of the evidence that Miselis posed a danger to the community following his arrest in 2018. (Dkt. 36). Now, Miselis seeks to prove by clear and convincing evidence that he is not a danger to others or to the community. The evidence presented does not support such a finding.

Miselis seeks to characterize his acts of violence as the result of being caught up in "emotionally charged and turbulent political rallies" and that such "unique and aberrant" circumstances won't arise again. (Dkt. 144 at 1). That may be. But these acts of violence were not the result of unforeseeable happenstance. Miselis sought out such violence on multiple occasions. He trained and equipped himself for such violence. And if released, Miselis has not shown by clear and convincing evidence that he would not do so again.

**Defendant Benjamin Drake Daley**

In support of his release, Daley states that his parents have agreed to assume custody of him in their Oregon home where he was raised, and that they would employ him at their construction company. (Dkt. 180). He states that home confinement with electronic monitoring, with exceptions for work, attendance at Alcoholics Anonymous meetings, and religious services would be acceptable. *Id*. Daley also argues that all violent conduct cited by the Government in favor of detention occurred on or prior to August 12, 2017. (Dkt. 139 at 4–5). Further, Daley argues that "[t]here is no evidence" that he engaged in or encouraged any acts of violence during the month and a half between the UTR Rally and his arrest. *Id*. Finally, Daley argues that he is

similarly situated to Co-Defendant Cole Evan White, who was released on bail pretrial per the Government's consent motion. *Id.*

Daley similarly fails to prove by clear and convincing evidence that he would pose no danger to the community or to others if released pending appeal. Like Miselis, Daley is an admitted member of RAM, a militant white-nationalist organization that trains its members for violent encounters at political rallies, (Dkt. 142 at 2), and he has attended several such training sessions. *Id.* Like Miselis, Daley has engaged in gratuitous violence at political rallies in the past as a member of RAM. (Dkt. 142 at 9, 10, 16, 18, 19, 20).

Daley's argument that he should be released because Cole Evan White was released is also unconvincing. Daley was the purported leader of the conspiracy. (Dkt. 142 at 5, 26). He has traveled internationally to meet with other white supremacy groups. (Dkt. 191 at 3). Furthermore, the disturbing evidence of Daley's celebration of his acts of violence cannot be overlooked. (Dkt. 142 at 21–25).

The Court's decision is also significantly informed by U.S. Magistrate Judge Hoppe's decision denying Daley's previous motion for release on bail. There, Judge Hoppe found "by clear and convincing evidence that no conditions will reasonably assure the safety of another person or the community if released." (Dkt. 65). Now, Daley seeks to prove the opposite: that clear and convincing evidence exists that Daley presents no danger to others or the community. 18 U.S.C. § 3143(b)(1). Daley seeks release with similar conditions, and the evidence of Daley's violent conduct—and celebration of that conduct—is no less troubling. Daley has not met his burden under § 3143(b).

## Defendant Thomas Walter Gillen

In support of his release, Gillen points to his lifelong residency in the Los Angeles metropolitan area, his extensive family ties there, and the full-time employment that he says awaits him upon release. (Dkt. 146 at 2). He also represents that he has not attended any rallies since the UTR rally.[2] *Id.*

Upon this Court's request, Gillen submitted supplemental briefing on his proposed conditions of release stating that his father, Mr. James Gillen, has consented to take custody of Gillen at his home in Torrance, California, if his son is released pending appeal. (Dkt. 189). Gillen anticipates that he would be able to return full time to his previous job at The New Generation Engineering and Construction Company in Gardena, California. *Id*. at 2. Gillen states he would accept home confinement with electronic monitoring, requesting limited release for employment, religious services, and medical appointments. *Id.*

Like Miselis and Daley, Gillen fails to overcome the considerable evidence against him. Like his Co-Defendants, Gillen is an admitted member of RAM, a militant white-nationalist organization that trains its members for violent encounters at political rallies. (Dkt. 143 at 2). Gillen has attended several such training sessions. *Id*. at 2,5. Gillen has attended other rallies rife with violent confrontation in the past as a member of RAM. *Id*. at 3, 5. Gillen has boasted about this violent conduct in electronic communications. *Id*. at 8.

As with his Co-Defendants, little has changed since the determination at Gillen's arrest, where the Government showed by a preponderance of the evidence that Gillen was a danger to the community. (Dkt. 7-11). At Gillen's initial appearance, U.S. Magistrate Judge Jean Rosenbluth

---

[2] Gillen's brief states that he has not attended any rallies since "August 12, 2019." But especially since this brief was submitted on July 19, 2019, the Court will assume that Gillen intended to write "August 12, 2017," the date of the UTR rally.

found that no condition or combination of conditions would reasonably assure the safety of any person or the community. (Dkt. 7-7). In the detention order, Judge Rosenbluth noted that Gillen "traveled across [the] country and the state for the purpose of committing violence," that upon release he would have "ubiquitous access to internet, which was used to plan and coordinate commission of violence and quite possibly to encourage others to do so," and that he was previously convicted of obstructing a police officer and possessing a firearm without an identifying mark.

In 2018, this evidence sufficed to show by clear and convincing evidence that Gillen posed a danger to the community. 18 U.S.C. § 3142(f). Now, under the more demanding § 3143(b),[3] this evidence is more than sufficient to mandate his continued confinement. Gillen has failed to demonstrate by clear and convincing evidence that he poses no danger to others or to the community.

## Conclusion

All three Defendants have failed to prove by clear and convincing evidence that they will not pose a danger to the safety of any other person or the community. As a result, the Court need not reach the other requirements of § 3143(b)(1).

An accompanying order shall issue.

Entered on this __17th__ day of September, 2019.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

---

[3] While § 3142(f) requires the Government to prove by clear and convincing evidence that Defendants posed a danger to others or to the community, § 3143(b) requires the Defendant to prove by clear and convincing evidence that he poses no such danger.